UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
SVETLANA KLEYMAN, M.D.,

                            Plaintiff,

            -against-                       **NOTICE OF REMOVAL**

SUNY DOWNSTATE MEDICAL              Kings County Clerk
CENTER, LISA DRESNER, M.D., in her      Index No. 505108/2016
individual capacity, STEPHEN
WADOWSKI, M.D., in his individual
capacity, and JOHN F. WILLIAMS, M.D.,
in his individual capacity,

                            Defendants.
------------------------------------------------------X

TO THE CLERK OF THE COURT:

       PLEASE TAKE NOTICE that Defendants SUNY DOWNSTATE MEDICAL CENTER;

LISA DRESNER, M.D.; STEPHEN WADOWSKI, M.D.; and JOHN F. WILLIAMS, M.D.

("Defendants"), by their attorney, ERIC T. SCHNEIDERMAN, Attorney General of the State of

New York, hereby file this notice of removal of this action, <u>Svetlana Kleyman, M.D. v. SUNY</u>

<u>Downstate Medical Center, et al.</u>, Index No. 505108/2016, currently pending in the Supreme

Court of the State of New York, Kings County, which is described below.

       1.       On or about April 5, 2016, the plaintiff commenced this action entitled <u>Svetlana</u>

<u>Kleyman, M.D. v. SUNY Downstate Medical Center, et al.</u>, Index No. 505108/2016 ("the State

Court Action") in the Supreme Court of the State of New York, Kings County, by filing a

Summons and Complaint in the Kings County Clerk's Office.

       2.       This action is a civil action over which this Court has original jurisdiction under

28 U.S.C. § 1331 in that it seeks damages, attorneys' fees, and costs for alleged violations of

plaintiff's rights under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as well as certain state law claims over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

3.     Defendants seek removal of this action to this Court pursuant to 28 U.S.C. § 1441(a) on the ground that it is an action over which this Court would have original federal question jurisdiction.

4.     Copies of the Summons and Complaint filed in the State Court Action setting forth the claim for relief upon which the State Court Action is based, together with a true copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing, are attached hereto as Exhibit 1.  Upon information and belief, to date, no other process, pleadings, or orders have been served in this action.

5.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1) as it is filed within thirty (30) days after Defendants received on or about April 14, 2016 copies of the Summons and Complaint in the State Court Action setting forth the claim for relief upon which the action is based.

6.     No prior application for this relief has been made.

7.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of this Notice of Removal to the plaintiff's counsel of record and will file a copy of this Notice of Removal with the clerk of the state court in which this action has been pending.

WHEREFORE, Defendants hereby remove this action from the Supreme Court of the

State of New York, Kings County, to the United States District Court for the Eastern District of

New York.

Dated: New York, New York
      May 6, 2016

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
<u>Attorney for Defendants</u>
By:

STEVEN L. BANKS
Assistant Attorney General
120 Broadway - 24th Floor
New York, New York 10271
Tel: (212) 416-8621
Fax: (212) 416-6075
<u>Steven.Banks@ag.ny.gov</u>

TO:    Daniel J. Kaiser, Esq.
      KAISER SAURBORN & MAIR, P.C.
      <u>Attorneys for Plaintiff</u>
      111 Broadway, Suite 1805
      New York, New York 10006
      (212) 338-9100

# EXHIBIT
# 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
-------------------------------------------------------------------X

SVETLANA KLEYMAN, M.D.,                           **Index No.:** 505108/2016

                    Plaintiff,

        -against-                                 **SUMMONS**

                                                  Date of Purchase
SUNY DOWNSTATE MEDICAL CENTER,                    of Index No.: 04/05/2016
LISA DRESNER, M.D., in her individual capacity and
STEPHEN WADOWSKI, M.D., in his individual capacity, and        RECEIVED BY
JOHN F. WILLIAMS, M.D. in his individual capacity,
                                                        APR 1 4 2016
                    Defendants.
                                                  Office of General Counsel
-------------------------------------------------------------------X


        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer within twenty [20] days after the service (or within thirty [30] days after the
service is complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgement will be taken against you by
default for the relief demanded in the complaint.

        The plaintiff designates Kings County as the place of trial which is the county in which
the plaintiff was employed by the defendant.

Dated: New York, New York
       April 5, 2016

                               KAISER SAURBORN & MAIR, P.C.
                               Attorneys for Plaintiff

                         By: _____
                               Daniel J. Kaiser, Esq.
                               111 Broadway, Suite 1805
                               New York, New York 10006
                               (212) 338-9100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - -
                                 x

Svetlana Kleyman M.D.

RECEIVED BY

APR 1 4 2016

Office of General Counsel

                        Plaintiff/Petitioner,

        -against-                           Index No. _505 108/2016_

SUNY Downstate Medical Center et al

                       Defendant/Respondent.
                                   x

### NOTICE OF COMMENCEMENT OF ACTION
### SUBJECT TO MANDATORY ELECTRONIC FILING

       PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

       NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing

       Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

       The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

       **Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

       **Parties not represented by an attorney: Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in e-filing.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 04/05/2016

_____
Signature

DANIEL J KAISER
Name

KAISER SAURBORN & MAIR, P.C.
Firm Name

111 BROADWAY, SUITE 1805
Address

NEW YORK, NY  10006
City, State, and Zip

212-338-9100
Phone

kaiser@ksmlaw.com
E-Mail

To:   SUNY Downstate Medical Center;
Lisa Dressner, M.D.; Stephen Wadowski, M.D.;
John F. Williams, M.D.
450 Clarkson Ave.
Brooklyn, NY 11203

9/3/15

Index #                    Page 2 of 2                    EFM-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------X

SVETLANA KLEYMAN, M.D.,

                  Index No.: 505108/2016

        Plaintiff,

    -against-

                  COMPLAINT

SUNY DOWNSTATE MEDICAL CENTER,
LISA DRESNER, M.D., in her individual capacity and
STEPHEN WADOWSKI, M.D., in his individual capacity, and
JOHN F.WILLIAMS, M.D. in his individual capacity,

                  RECEIVED BY

                  APR 14 2016

         Defendants.

                  Office of General Counsel

-------------------------------------------------------------------------X

       Plaintiff, Svetlana Kleyman, M.D. by her attorneys Kaiser Saurborn & Mair, P.C., as

and for her complaint against defendants, alleges as follows:

### PARTIES, JURISDICTION, AND NATURE OF ACTION

    1.     Plaintiff, Svetlana Kleyman, M.D. ("plaintiff" or "Kleyman"), was employed by

SUNY Downstate Medical Center ["Downstate"] as a categorical surgical resident.

    2.     Defendant, Downstate, is a public institution of higher learning located in New

York City and a college of the SUNY system. Downstate receives substantial federal funding.

    3.     Defendant, Lisa Dresner, M.D ["Dr. Dresner"]. is General Surgery Program

Director for Downstate.

    4.     Defendant, Stephen Wadowski, M.D. ["Dr. Wadowski"] is Associate Dean for

Graduate Medical Education and Designated Institutional Official (DIO)

    5.     Defendant, John F. Williams ["President Williams"] is President of Downstate.

    6.     Venue is properly laid in this court in that the causes of action arose in Kings

County.

7.      During the course of her employment, while the plaintiff was on an approved medical leave, plaintiff was discriminated against because of her disability and retaliated against for complaining of disability discrimination.  During the fourth year of her surgical residency program she became seriously ill resulting in the loss of motor functions in her lower body. When she attempted to return to her surgical residency, following a period of convalescence, defendants denied her the right to return to her former position. Further, defendants denied her reasonable accommodation despite her repeated requests that she be accommodated. As result of their egregious conduct, defendants violated Federal, State, and City disability discrimination laws.

### BACKGROUND

### I.

### DR. KLEYMAN'S SURGICAL RESIDENCY

8.      On July 1, 2010 Dr. Kleyman commenced her surgical residency program with Downstate.

9.      During the course of her residency, Dr. Kleyman received uniformly positive feedback.

10.     On June 1, 2013 she was appointed PGY4 (Post Graduate Year Fourth Year)

11.     The sole reason Downstate has not permitted Dr. Kleyman to return to her residency program is that she became seriously ill resulting in a motor function disability requiring certain reasonable accommodations.

2

## II.

## DR. KLEYMAN'S DISABILITY

12.     On December 30, 2013, Dr. Kleyman completed her rotation as a PGY4 chief resident at the Brooklyn Veterans Hospital.

13.     Dr. Kleyman received "Superior" scores on her rotation evaluation by Brooklyn Veterans Hospital Chief of Surgery, Dr. Weber.

14.     This was Dr. Kleyman's last rotation before she became ill.

15.     On January 2, 2014, Dr. Kleyman traveled to her parents' home in Indianapolis for a scheduled vacation.

16.     Shortly thereafter, she became gravely ill. She was admitted to the Hospital for the next 3 months. This included a prolonged stay in the intensive care unit at Methodist Hospital in Indianapolis, followed by transfer to inpatient rehabilitation.

17.     She consumed a viral infection in her spinal cord, which resulted in spinal cord inflammation and paraplegia.

18.     Dr. Kleyman's disability substantially interferes with major life functions including walking.

## III.

## DR. KLEYMAN'S REPEATED REQUESTS FOR REASONABLE ACCOMMODATION

19.     On April 8, 2014, Dr. Kleyman communicated with Dr. Dresner after she came home from inpatient rehabilitation. Dr. Dresner wrote her writing **" I look forward to you coming back when you are ready."**

3

20.     On November 30, 2014, Dr. Kleyman started communicating with Dr. Dresner about plans for returning back to residency. Dr. Dresner responded stating she was going to contact the ABS (American Board of Surgery) and RRC (Residency Review Committee) and Dr. Wadowski and see what is involved in the process for me to restart residency.

21.     On January 28, 2015, Dr. Dresner met with Human Resources to begin ADA Reasonable Accommodation process for Dr. Kleyman.

22.     On February 10, 2015, Dr. Kleyman received paperwork from Human Resources to fill out for reasonable accommodation and release of medical information from her physician.

23.     On February 13, 2015, Dr. Kleyman returned completed paperwork to Human Resources.

24.     On February 21, 2015, Dr. Kleyman commenced e-mail discussions with Dr. Dresner regarding her return to residency.  Dr. Dresner and Dr. Kleyman began discussing a possible transition period to resuming her General Surgery Training.  Dr. Dresner suggested that Dr. Kleyman begin integrating back into the program, by going to her clinic, scrubbing in on her cases, and helping with the simulation lab.

25.     On March 6, 2015, Human Resources requested a letter from her neurologist regarding diagnosis and prognosis. She provided a letter from Dr. Robert Alonso [Chief Neurologist at Indiana University Health].

26.     On March 18, 2015, Dr. Dresner wrote Dr. Kleyman an e-mail updating her on the process of returning her to her surgical residency program.

27.     Dr. Dresner noted that regarding the ABS (American board of surgery) things were "ok", that Dr. Wadowski told her how to deal with the process. She stated that "***she did not***

4

*anticipate any problems"*.

28.     On April 7, 2015, Dr. Kleyman wrote Dr. Dresner to let her know that she spoke

to a woman named Heather Badger the ADA Coordinator and that she informed her that her boss

was to meet with Dr. Dresner for the final sign off on my accommodation request.  Dr. Kleyman

requested from Dr. Dresner updates from her end (the department of surgery).  Dr. Dresner wrote

that she is meeting with Dr. Wadowski and that Dr. Kleyman was on the list of topics.

29.     On May 5, 2015, Dr. Kleyman emailed Dr. Dresner to get an update on the status

of her paperwork. Dr. Dresner noted, " it was her understanding that there were some issues they

needed to resolve." Dr. Kleyman inquired whether the issues were with the Human Resources

department or not. Dr. Kleyman received no response to this inquiry.

30.     On May 10, 2015, Dr. Kleyman reached out to Kevin Antoine, the Chief

Diversity officer of Downstate, to see if he could facilitate a conversation between the

department of surgery and human resources. He said that he would arrange a meeting.

31.     On May 14, 2015, Dr. Kleyman emailed Dr. Dresner, that she was aware that

there was a meeting scheduled with the Department of Surgery, Human Resources and Mr.

Antoine and inquired whether this was regarding accommodations.

32.     Dr. Dresner responded saying that "she can't answer me" and that " we need to

wait and see what happens with HR."

33.     On May 21, 2015, Dr. Kleyman attempted multiple times to email and call both

her program director and human resources and received no response.

34.     On May 27, 2015, Dr. Kleyman received a letter signed by Dr. Dresner and

SUNY Downstate Department of Surgery Chairman- Dr. Alfonso. This letter was CC'ed to Dr.

5

Wadowski, and Kevin Antoine.  The letter informed Dr. Kleyman that her program does not have the clinical capacity to add an additional resident in the PGY 4 and PGY 3 level. Thus they are deferring her request to return to this residency.

35.     On May 27, 2015, Dr. Kleyman responded to the May 27th letter.  She outlined briefly the conversations that she had had with Dr. Dresner regarding plans for my return and how nothing had ever been mentioned about "clinical capacity." She asked for a response so that she and Downstate could engage in a discussion about what is going on. She reiterated that she wanted to return to this program and continue my training.

36.     Downstate did not respond to her letter.

37.     On June 1, 2015, Dr. Kleyman wrote another e-mail to Dr. Dresner and Dr. Alfonso, contributing some additional information to see if I could assuage some concerns that they may be having concerning her fitness to return to the residency program.

38.     Dr. Kleyman did not receive a response.

39.     Downstate's rational for not returning Dr. Kleyman to her residency program was a blatant pretext for disability discrimination. Downstate refused to bring back Dr. Kleyman who by this point had completed the large proportion of her clinical case load requirements.

40.     Dr. Dresner characterized Dr. Kleyman's return to active status following her disability leave as the "adding" of a resident. In fact, Dr. Kleyman is already in the program as a fourth year resident. She has more seniority than the residents whom Dr. Dresner advanced and is still advancing to active fourth year status ahead of her.  Further, Downstate has historically brought back other residents who were ready to return from leave, and specifically on July 1st,

6

2015.

41.     The reason Downstate has refused to permit Dr. Kleyman to return to her surgical residency program is because she is disabled and continues to experience motor function limitations in her lower body.

### IV.

**DOWNSTATE'S REFUSAL TO PROVIDE REASONABLE ACCOMODATIONS AND RETURN DR. KLEYMAN TO HER POSITION CAUSED HER TO RETAIN AN ATTORNEY**

42.      On June 8, 2015, in view of Downstate's refusal to accommodate her disability and return her to her position, Dr. Kleyman was forced to retain an attorney.

43.      On June 15, 2015, Arthur Block, her counsel, contacted Dean Sass and requested an open dialogue between Downstate and Dr. Kleyman.

44.      On June 18, 2015, Dr. Kleyman had a phone conversation with Dr. Dresner, and faculty member Dr. Mcintyre on video chat.  They expressed their apologies for the situation. However, they did not propose any way to resolve the situation. Dr. Kleyman inquired about her status in the program, and they could not answer definitively, but said that "I guess that I was still a resident in their program."

45.     On June 26, 2015, Mr. Block sent a legal demand letter to President Williams.

46.     President Williams did not respond.

47.     On July 22, 2015, Dr. Kleyman wrote a letter to Mr. McCall (Chairman of the board of Trustees).

48.     Mr. McCall responded by advising Dr. Kleyman that the letter was forwarded to the President. The President never responded to the letter.

7

49.     On July 23, 2015, Natalie Arrindell, from the Downstate Graduate Medical Education office, informed her that she was assigned as Dr. Kleyman's contact for the department of surgery.  The letter also advised Dr. Kleyman that Downstate was working on securing a research position for her.

50.     On August 6th,  Mr. Block sent a final pre-litigation demand letter to President Williams.  In response to this letter, on August 10th, he was approached by Kevin O'Mara Downstate's Senior Counsel) who stated that "the department of surgery is actively seeking a research position for Dr. Kleyman, as a starting point for her return." Throughout the fall of 2015, Mr. Block communicated with Downstate's Senior Counsel Kevin O'Mara, concerning when and how Dr. Kleyman would be reasonably accommodated.

51.     The Senior Counsel danced around the inquiries never directly responding. While the Senior Counsel claimed returning Dr. Kleyman to her residency was continuing to be pursued no actions were actually taken to return her to her residency.

52.     Ultimately, Downstate did not offer to reinstate Dr. Kleyman as a resident. Instead, they continuously misled her about creating a research position for her, as soon as one was established and funded.

53.     As of January 1, 2016, Dr. Kleyman still did not receive any sort of offer or hope of resolution from Downstate.  She was left with no income and no benefits. Due to this treatment by Downstate, Dr. Kleyman had to go and find a position on her own.

54.     She interviewed for and was offered a one-year position as a "Clinical Research Fellow" at Memorial Sloan Kettering with salary and benefits.

55.     On February 22, 2016, Dr. Kleyman wrote again to Downstate inquiring as to her residency status and the impact of her extended leave on her status.

56.     Dr. Kleyman still has received no substantive response as to if and when she can return to her residency and what impact her extended leave will have on her right and/or ability to return to her residency.

57.     Defendants have no intention of returning Dr. Kleyman to her surgical residency.

58.     Defendants could have reasonably accommodated Dr. Kleyman but instead chose not to accommodate her and instead discriminate against her because of her disability.

59.     At all times, Dr. Kleyman remained willing and able to perform all of the functions of her surgical residency despite the existence of her physical limitations.

60.     Dr. Dresner and Dr. Wadowski and Dr. Williams substantially influenced the decision to not reasonably accommodate Dr. Kleyman and not return her to its surgical residency program. All three made a calculated and intentional decision to deny Dr. Kleyman the right to return to her residency because of her disability and because she complained of the discrimination.

61.     The reasons provided by Defendants for refusal to return Dr. Kleyman to its surgical residency program were specious and false.

62.     Defendants' offered rationales were a blatant pretext for unlawful disability discrimination.

63.     Defendants' actions toward plaintiff were done maliciously and/or in reckless disregard of plaintiff's rights.

64.     Upon information and belief, defendants knew that their actions with respect to

9

plaintiff violated state and city civil rights laws.

65.     Defendants had no legitimate business reason for denying plaintiff the same professional and academic opportunities as her non-disabled peers.

66.     Defendants' conduct has had a continuing impact on plaintiff.

## CAUSE OF ACTION I

67.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "66" as if incorporated and realleged herein.

68.     Defendants, Downstate, discriminated against plaintiff because of her disability and retaliated against her for objecting to the disability discrimination.

69.     By reason thereof, defendants have violated the Rehabilitation Act of 1973 [29 U.S.C. 701, et.al.] and has caused Plaintiff damages, including lost pay and emotional injuries.

## CAUSE OF ACTION II

70.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "66," and "68" as if incorporated and realleged herein.

71.     By reason thereof, Defendants have violated Executive Law §296 and has caused Plaintiff damages, including lost pay and emotional injuries.

## CAUSE OF ACTION III

72.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through " 66," and "68" as if incorporated and realleged herein.

73.     By reason thereof, Defendants have violated New York City Administrative Code §8-502(a) and has caused Plaintiff damages, including lost pay and emotional injuries.

10

**WHEREFORE,** plaintiff demands judgment against defendants as follows:

(i)      Assessing compensatory damages in an amount to be determined at trial;

(ii)     Assessing punitive damages in an amount to be determined at trial;

(iii)    The reinstatement of Plaintiff to Defendants' surgical residency program with all

         necessary reasonable accommodations;

(iv)     Attorney fees and disbursements; and

(v)      For such other relief as the Court deems just and proper.

Dated:  New York, New York
         April 5, 2016

                              **KAISER SAURBORN & MAIR, P.C.**

                   By:      _____
                              Daniel J. Kaiser, Esq.

                   Attorney for Plaintiff
                   111 Broadway, Suite 1805
                   New York, New York 10006
                   (212) 338-9100

11