UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                              :
SVETLANA KLEYMAN, M.D.,                                       :
                                                              :
                               Plaintiff,                     :    SETTLEMENT AGREEMENT,
                                                              :    GENERAL RELEASE, AND
              - against -                                     :    ORDER OF DISMISSAL WITH
                                                              :    PREJUDICE
SUNY DOWNSTATE MEDICAL CENTER, LISA                           :
DRESNER, M.D., in her individual capacity, and               :
STEPHEN WADOWSKI, M.D., in his individual                    :    16-CV-2288 (AMD) (VMS)
capacity, and JOHN F. WILLIAMS, M.D., in his                 :
individual capacity,                                         :
                                                              :
                               Defendants.                    :
                                                              :
-------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   DEC 2 ? 2016   ★

BROOKLYN OFFICE

This SETTLEMENT AGREEMENT, GENERAL RELEASE, AND ORDER OF

DISMISSAL WITH PREJUDICE ("Settlement Agreement") is made by and between Plaintiff

SVETLANA KLEYMAN, M.D. ("Plaintiff") and Defendant THE STATE UNIVERSITY OF

NEW YORK ("SUNY") as of December 2‡, 2016:

   WHEREAS, SUNY Downstate Medical Center is not a legally cognizable entity separate

and apart from SUNY, which is the proper institutional defendant in this action; and

   WHEREAS, any reference to SUNY in this Settlement Agreement includes, but is not

limited to, SUNY Downstate Medical Center; and

   WHEREAS, Plaintiff commenced this action by filing a complaint on or about April 5,

2016 ("the Complaint") in the Supreme Court of the State of New York, Kings County, under

Index No. 505108/2016, against SUNY, and against Defendants LISA DRESNER, M.D.,

STEPHEN WADOWSKI, M.D., and JOHN F. WILLIAMS, M.D. in their individual capacities

(the "Individual Defendants") (collectively "Defendants"), asserting claims pursuant to the

1

Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "Action"); and

WHEREAS, on May 6, 2016, Defendants removed the Action to the United States District Court for the Eastern District of New York where it was assigned Case Number 16-cv-2288; and

WHEREAS, on or about July 24, 2015, Plaintiff filed a grievance under Article 7 of the collective bargaining agreement between the State of New York and the United University Professions ("UUP") with SUNY file number 15-036 (the "Grievance");

WHEREAS, on or about April 6, 2016, a Step One decision was issued in response to the Grievance, and the UPP thereafter appealed the Step One decision to the SUNY Chancellor, and the appeal is pending; and

WHEREAS, Plaintiff filed a Notice of Intention to File a Claim against State of New York, dated August 14, 2015, in the New York Court of Claims; and

WHEREAS, SUNY, including, without limitation, any and all of its constituent schools, hospitals, medical centers (including without limitation SUNY Downstate Medical Center), divisions and units, and their present and former officers, agents and employees, whether in their individual or official capacities, including but not limited to the Individual Defendants, expressly denies any wrongful conduct or liability, or violation of any federal, state, or local statute, ordinance, law or SUNY policy or practice in this matter whatsoever; and

WHEREAS, Plaintiff and SUNY including, without limitation, any and all of its constituent schools, hospitals, medical centers (including without limitation SUNY Downstate Medical Center), divisions and units, and their present and former officers, agents and employees, whether in their individual or official capacities, including but not limited to the Individual Defendants, desire to fully resolve the claims between them and any and all other disputes,

2

whether known or unknown, without further litigation, arbitration or proceedings and without

admission of fault or liability;

NOW THEREFORE, in consideration of the mutual promises, covenants, representations

and other consideration contained in this Settlement Agreement, Plaintiff and SUNY hereby

stipulate and agree as follows:

1.    **Dismissal of the Action Against SUNY With Prejudice.**

The Action and all claims which were or could have been asserted therein are dismissed

with prejudice against SUNY pursuant to Fed. R. Civ. P. 41(a) and without payments, attorneys'

fees, costs, disbursements, or expenses in excess of the amounts set forth in Paragraph 3 of this

Settlement Agreement.

2.    **Dismissal of Action Against Individual Defendants With Prejudice.**

Simultaneously with the execution of this Settlement Agreement, counsel for Plaintiff shall

execute and deliver to counsel for Defendants a stipulation and order in the form attached hereto as

Exhibit A dismissing with prejudice the Action and all claims in the Action against the Individual

Defendants in their individual and official capacities pursuant to Fed. R. Civ. P. 41(a), and without

payments, attorneys' fees, costs, disbursements or expenses to any of these parties as against the

other.

3.    **Payments to Plaintiff.**

For and in full consideration of Plaintiff's execution of this Settlement Agreement, her

agreement to be bound by its terms, and her undertakings as set forth herein including, but not

limited to, the dismissal of the Action with prejudice against Defendants, withdrawal of the

Grievance with prejudice, execution of all necessary and appropriate vouchers and other

documentation as may be required to effectuate payment, and other good and valuable

consideration, the sufficiency of which is hereby acknowledged, the following payments shall be

3

made in full and final satisfaction of all claims, allegations and causes of actions, direct or indirect, known or unknown, that Plaintiff had, has or may have had against the State of New York and SUNY, together with all of their present and former agencies, principals, officers, directors, members, trustees, shareholders, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, whether in their personal or official capacities, including but not limited to the Individual Defendants in their personal and official capacities, arising out of conduct, acts, or omissions prior to, up to and including the date of this Settlement Agreement, including but not limited to those asserted in the Action, the Grievance, and the Notice of Intention to File a Claim, as well as in full and complete satisfaction of all claims for compensatory damages (including but not limited to pain and suffering, mental and emotional anguish and trauma, damage to reputation, punitive damages, and liquidated damages), lost wages, benefits, and economic damages (including but not limited to back pay, front pay, severance pay, commissions, bonuses, reimbursements, and pension plan contributions), and attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff for any and all counsel who have assisted Plaintiff, or at any time represented Plaintiff in the Action or in connection with the Grievance or Notice of Intention to File a Claim as well as in connection with any other representation, negotiation, proceeding, administrative, judicial, or otherwise, and any other claim or action alleging any of the acts, transactions, occurrences, or omissions asserted in the Action:

a.      SUNY shall pay to Plaintiff the gross sum of Twenty-Five Thousand Dollars ($25,000), less any and all applicable withholding and/or payroll deductions (including, without limitation, federal, state and local taxes), for which an I.R.S. Form W-2 shall be issued, in full and complete satisfaction of any and all claims, allegations, or causes of action by Plaintiff for past or future lost wages and benefits (including, without limitation, back pay, front pay, severance pay, commissions, bonuses, reimbursements and pension plan contributions). It is agreed and

4

understood that Plaintiff's claim for back-pay concerns her request for reappointment at SUNY effective July 1, 2015, and that any back-pay amount she could recover in the Action covers the period from July 1, 2015 to December 31, 2015.  The foregoing payment shall be made payable to "Svetlana Kleyman" and sent to Svetlana Kleyman, M.D., 475 Main Street, Apt. 14L, Roosevelt Island, New York 10044.

       b.     The State of New York, on behalf of SUNY, shall pay to Kaiser Saurborn & Mair, P.C., as attorneys for Plaintiff, the sum of Seventy-Five Thousand Dollars ($75,000), for which an I.R.S. Form 1099 shall be issued, in full and complete satisfaction of any and all claims by Plaintiff for compensatory damages (including but not limited to pain and suffering, mental and emotional anguish and trauma, damage to reputation, economic damages, punitive damages, and liquidated damages), and attorneys' fees, costs, disbursements and expenses incurred by Plaintiff for any and all counsel who have at any time represented Plaintiff in this Action as well as in connection with any other proceeding, grievance, administrative, judicial, formal or informal or otherwise, including but not limited to any other claim, grievance or action alleging any of the acts, transactions, occurrences, or omissions asserted in the Action or elsewhere.  The foregoing payment shall be made payable to "Kaiser Saurborn & Mair, P.C., as attorneys for Svetlana Kleyman" and sent to Daniel J. Kaiser, Esq., Kaiser Saurborn & Mair, P.C., 111 Broadway, Suite 1805, New York, New York 10007.

       **4.**     **State Approval of Payments.**

     The payments referenced in Paragraph 3 of this Settlement Agreement are conditioned upon and subject to the approval of all appropriate state officials in accordance with N.Y. Public Officers Law § 17 and the "So Ordering" of this Settlement Agreement by the Court.  Plaintiff and Plaintiff's attorney agree to execute and deliver all necessary and appropriate vouchers and other documentation requested with respect to obtaining such approval and effectuating payment,

including the Affidavit of Medicare Eligibility Status ("Affidavit") attached hereto as Exhibit B and any required attachments thereto. In the event such approvals are not obtained or the Court does not "so order" this Settlement Agreement, then this Settlement Agreement shall be null, void, and of no further force and effect.

**5.**      **Accrual of Interest.**

In the event that the payments referenced in Paragraph 3 of this Settlement Agreement have not been made by the one hundred twentieth day after the latest of receipt by the New York State Department of Law of a "So Ordered" copy of this Settlement Agreement, the Stipulation and Order of Dismissal with Prejudice of the Action attached hereto as Exhibit A, together with all other documentation required under Paragraph 4 of this Settlement Agreement, interest on any part of the sum not paid by the one hundred twentieth day shall begin to run on the one hundred twenty-first day at the statutory rate pursuant to 28 U.S.C. § 1961.

**6.**      **Liability of Plaintiff for Taxes.**

Any taxes, or interest or penalties on taxes, on the payments or services referred to in Paragraph 3 of this Settlement Agreement shall be the sole and complete responsibility of Plaintiff (or her attorneys respectively, for fees paid to said attorneys) and Plaintiff and her attorneys shall have no claim, right, or cause of action against SUNY, the State of New York, or any of their agencies, departments, or subdivisions on account of such taxes, interest, or penalties. In the event that any taxing authority or any other federal, state or local government, administrative agency or court issues a final determination that SUNY and/or the State of New York is liable for the failure of Plaintiff (or her attorneys for any attorneys' fees hereunder) to pay federal, state or local income, or other taxes or withholdings with respect to any portion of the payments referred to in Paragraph 3 of this Settlement Agreement, or are liable for interest or penalties related thereto, Plaintiff (or her attorneys, for liabilities with respect to fees paid to

6

them) agree to reimburse and indemnify SUNY and/or the State of New York for such liability with respect to any portion of the payments referred to in Paragraph 3 of this Settlement Agreement, so long as Plaintiff has been provided with notice of any such claim or proceeding promptly following receipt of notice of such claim or proceeding by SUNY and/or the State of New York.

**7.     Medicare Certification.**

As a Medicare recipient, Plaintiff agrees to notify Medicare, as well as any Medicare Part C Plan (also referred to as Medicare Advantage Plans, Medi-Gap Plans), (collectively hereinafter referred to as "Medicare") of the settlement in this Action and provide a completed and notarized Affidavit of Medicare Eligibility Status in the form annexed hereto as Exhibit B (hereinafter referred to as "Medicare Affidavit"), to the Office of the Attorney General.  Plaintiff and her attorneys acknowledge and understand that receipt of the fully executed Medicare Affidavit together with any required attachments is a prerequisite to payment of the settlement amounts referenced in Paragraph 3 of this Settlement Agreement.  Furthermore, Plaintiff acknowledges and understands that a Medicare Set-Aside Trust may also be required, pursuant to 42 U.S.C. § 1395y(b) and 42 C.F.R. §§ 411.22 through 411.26, if future anticipated medical costs are found to be necessary and in accordance with the Medicare Affidavit.

**8.     Liability of Plaintiff for Medicare Liens.**

Plaintiff agrees to defend, indemnify and hold harmless the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), regarding any liens or past and/or future Medicare payments, presently known or unknown in connection with this matter.  If conditional and/or future anticipated Medicare payments have not been satisfied, the State of New York reserves the right to issue a multi-party settlement check naming Medicare as a payee or to issue a check to Medicare directly based on Medicare's final letter.

7

9. **Liability of Plaintiff for Liens.**

Plaintiff agrees that neither SUNY, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), nor any of their officials, employees, or agents, whether in their individual or official capacities, including but not limited to the Individual Defendants, shall be responsible for any liens, off-sets, deductions or recoupments of any kind (including, but not limited to, any and all workers' compensation, tax, child support, unemployment compensation, Medicare or Medicaid liens, off-sets, deductions or recoupments) which may attach to the payments referenced in Paragraph 3 of this Settlement Agreement. Plaintiff shall have no claim, right, or cause of action against SUNY, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), or any of their officials, employees, or agents, whether in their individual or official capacities, including but not limited to the Individual Defendants, on account of such liens, off-sets, deductions or recoupments, and agrees that she will defend, indemnify, and hold harmless SUNY, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), and any of their officials, employees, or agents, whether in their individual or official capacities, including but not limited to the Individual Defendants, for the satisfaction of any such liens, off-sets, deductions or recoupments.

10. **Plaintiff's Appointment as a Categorical Surgical Resident.**

Effective January 1, 2017, SUNY shall appoint Plaintiff as a third-year (PGY-3) categorical surgical resident at SUNY Downstate Medical Center salaried as a fourth-year (PGY-4) categorical surgical resident, subject to the terms of the Resident Agreement of Appointment attached hereto as Exhibit C. SUNY shall then offer Plaintiff a Resident Agreement of Appointment appointing her as a fourth-year (PGY-4) categorical surgical resident at a fifth-year (PGY-5) resident salary effective July 1, 2017, and, thereafter, subject to her satisfactory

8

performance as a fourth-year (PGY-4) categorical surgical resident, SUNY shall offer Plaintiff a Resident Agreement of Appointment appointing her as a fifth-year (PGY-5) categorical surgical resident at a six-year (PGY-6) resident salary effective July 1, 2018.

11.    **Opportunity to Remediate.**

It is understood that Plaintiff's appointment as a third-year (PGY3) categorical surgical resident is intended to prepare Plaintiff for appointment as a fourth-year (PGY-4) categorical surgical resident as of July 1, 2017.  If the surgical residency program identifies specific performance issues during Plaintiff's appointment as a third-year (PGY-3) categorical surgical resident, Plaintiff will be notified of the performance issue and afforded the opportunity to remediate.  At all times, however, SUNY is obligated to protect patient health and safety and, if during the period of her third-year (PGY-3) appointment, it reasonably believes that Plaintiff's performance has or may put patients at risk of harm and has not been corrected by remediation, SUNY may limit or modify or monitor Plaintiff's training to prevent such risk of harm, subject to all rights afforded to Plaintiff by SUNY or otherwise to challenge such limitations or restrictions. Upon Plaintiff's appointment as a fourth-year (PGY-4) categorical surgical resident and any subsequent appointment as a fifth-year (PGY-5) categorical surgical resident, Plaintiff will be held to the same standards and subject to the same policies and shall be afforded the same protections and remedies that are applicable to all other fourth-year (PGY-4) and fifth-year (PGY-5) categorical surgical residents.

12.    **Policy on Professional Misconduct.**

It is understood and agreed that SUNY is required under New York Education Law § 6530 to address any instance of professional misconduct as defined in that statute, and, if SUNY receives a report of professional misconduct regarding Plaintiff during her employment as a categorical surgical resident, it reserves the same right to take appropriate action regarding any

9

such instance as it would have with respect to any alleged professional misconduct by any other

categorical residents, subject to all applicable appeal procedures and other remedies available to

all other categorical residents when such action is proposed or taken by SUNY.

13.    **Provision of Reasonable Accommodations.**

During her employment as a categorical surgical resident, SUNY shall provide Plaintiff

with the use of a motorized standing wheelchair for the performance of her surgical duties, and,

further, shall provide Plaintiff with a wheelchair accessible call room and/or locker room.  If

Plaintiff subsequently determines that she requires additional or different accommodations for her

disability, she shall notify the Office of Diversity and Inclusion at SUNY Downstate Medical

Center in writing.  Once notified in writing of Plaintiff's request, SUNY will engage in a good

faith interactive process with Plaintiff and, if requested, her attorney and provide any appropriate,

necessary, and reasonable accommodations in accordance with SUNY Downstate Medical

Center's existing policies and procedures and applicable law.

14.    **Assistance in the Operating Room.**

SUNY will advise medical personnel (doctors, nurses, technicians) who will assist Plaintiff

in her surgical duties of the nature of her disability and her use of a motorized standing wheelchair,

and require that, as needed, they assist Plaintiff in the performance of her surgical duties, provided,

however, that any such assistance to Plaintiff shall not relieve or lessen Plaintiff's obligation to

perform surgical tasks required by the Accreditation Council of Graduate Medical Education and

the American Board of Surgery for her to be eligible for examination and certification in surgery.

Further, SUNY will make appropriate and reasonable adjustments to the operating room

environment to accommodate Plaintiff's use of a motorized standing wheelchair.

**15.    Affiliated Hospitals.**

SUNY shall provide Plaintiff with rotations at affiliated hospitals that are able and agree to accommodate Plaintiff's use of a motorized standing wheelchair.  SUNY shall not require Plaintiff to complete rotations at affiliated hospitals that are unable or unwilling to reasonably accommodate her disability.  Nothing in this Settlement Agreement diminishes SUNY's obligations to Plaintiff under the Accreditation Council for Graduate Medical Education's Program Requirements for Graduate Medical Education in General Surgery to ensure the availability of adequate resources for resident education.

**16.    American Board of Surgery In-Training Examination.**

As a condition of her appointment as a categorical surgical resident, Plaintiff agrees to sit for the American Board of Surgery In-Training Examination ("ABSITE") to be offered in February 2017.  In advance of the February 2017 ABSITE, SUNY agrees to provide Plaintiff with access to all ABSITE training materials that are available to other categorical surgical residents.

**17.    Plaintiff's Responsibility to Satisfy American Board of Surgery Criteria.**

Plaintiff acknowledges that it remains her obligation to satisfy the criteria required of the American Board of Surgery to be eligible for examination and certification in surgery, and that SUNY has no authority to waive or modify the criteria required by the American Board of Surgery for examination and certification in surgery.

**18.    Assistance of an Occupational Therapy Student.**

SUNY will assign an occupational therapy student from the College of Health Related Professions at SUNY Downstate to assist Plaintiff.  If any disagreement arises about the scope or nature of the assistance provided by the occupational therapy student, the parties will engage in a good faith interactive process to resolve the disagreement in accordance with Paragraph 13 of this Settlement Agreement.

11

19.    **General Release.**

For and in consideration of the payments referenced in Paragraph 3 of this Settlement

Agreement and other good and valuable consideration, the sufficiency of which is hereby

acknowledged, and except for the rights and obligations set forth in this Settlement Agreement,

Plaintiff, on behalf of herself, her heirs, executors, administrators, successors, and assigns

(collectively "the Releasing Parties"), hereby releases and forever discharge, the State of New

York, SUNY, together with all of their present and former principals, officers, directors,

members, trustees, shareholders, employees, agents, attorneys, insurers, subdivisions,

subsidiaries, heirs, administrators, and assigns, personally and in their official capacities,

including but not limited to the Individual Defendants in their personal and official capacities

(collectively "the Released Parties"), from all manner of actions, injuries, proceedings, causes of

action, grievances, suits, debts, obligations, dues, sums of money, accounts, contracts,

controversies, agreements, promises, damages, judgments, claims, and demands whatsoever,

direct or indirect, known or unknown, discovered or undiscovered, that the Releasing Parties ever

had, now have, or shall or may have in the future against some, any, or all of the Released Parties,

for or by reason of any act, transaction, occurrence, omission, cause, matter, or thing whatsoever

up to and including the date of this Settlement Agreement, including but not limited to: (a) any

and all claims regarding or arising out of the acts, transactions, occurrences, or omissions which

are described, alleged, or contained in the Action, including without limitation the Complaint in

the Action, the Grievance and the Notice of Intention to File a Claim; (b) any and all claims

regarding or arising directly or indirectly from Plaintiff's association with any of the Released

Parties or the terms and conditions of their association with any of the Released Parties; (c) any

and all claims of access to courts, conspiracy, retaliation, or discrimination based upon disability,

age, race, color, national origin, ancestry, religion, marital status, sex, sexual harassment, sexual

12

orientation, citizenship, military service, status, or medical condition; (d) any and all claims under

federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders,

including but not limited to claims under 42 U.S.C. §§1981-1988, Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq., Title IX of the Educational Amendments of 1972, 20

U.S.C. § 1681 et seq., the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Fair Labor Standards

Act of 1938, 29 U.S.C. § 201 et seq., the Age Discrimination in Employment Act of 1967, 29

U.S.C. §§ 621-634, the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act of 1993,

29 U.S.C. §2601 et seq., 42 U.S.C. § 1983, 42 U.S.C. § 1985, the New York State Human Rights

Law, N.Y. Exec. Law § 290 et seq., the New York City Human Rights Law, N.Y.C. Admin. Code

§ 8-101 et seq., the New York State Labor Law, N.Y. Labor Law §§ 740 and 741 et seq., N.Y.

Civil Service Law § 75-b, the United States Constitution, the New York State Constitution, the

New York City Charter, and any other federal, state or local law; (e) any claims of retaliation for

participation in a protected activity and/or engaging in any activity protected under any federal,

state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders; (f) any and all

claims for salary, bonuses, severance pay, vacation pay, sick pay, incentive pay, clinical practice

income, or other compensation, or any non-vested retirement, pension, health or savings plan

benefits; (g) any and all grievances pursuant to any applicable collective bargaining agreement;

and (h) any and all other claims, whether for moneys owed, damages (including but not limited to

claims for equitable relief, compensatory, punitive, or other damages), vocational services, breach

of implied or express contract, breach of promise, misrepresentation, negligence, fraud, estoppel,

defamation, assault, battery, infliction of emotional distress, tortious interference with contract,

tortious interference with business relations, tortious interference with prospective contractual

relations, tortious interference with prospective business relations, violation of public policy,

13

wrongful or constructive discharge, or any other tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other claims under federal, state, or local law relating to employment, education, vocational services, discrimination, retaliation, retirement, or otherwise. Except for the rights and obligations set forth in this Settlement Agreement, this release also includes a waiver and release of any and all claims related to allegations made before the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, and/or the New York City Commission on Human Rights, as well as any and all claims against the State of New York, its agencies, departments, and officials in the New York Court of Claims or any other forum, administrative or otherwise, related to or arising from any transactions, acts, omissions, or occurrences up to and including the date of this Settlement Agreement.

   20.   **Withdrawal of Grievance.**

   Plaintiff shall withdraw with prejudice and instruct the UUP to discontinue with prejudice, all pending grievances filed on her behalf, including the Grievance. Plaintiff agrees that, if the UUP does not withdraw any pending grievance or requests for arbitration with prejudice, she will not cooperate with, testify in, or otherwise assist in the processing of any such grievance, arbitration or other proceeding unless required to do so by law, and waives her rights to benefit from any award issued. Upon receipt by the Office of Labor Relations at the SUNY Downstate Medical Center of the withdrawal with prejudice of the Grievance by UUP, SUNY agrees to withdraw the Step One decision dated April 6, 2016, and agrees to remove the Step One decision from Plaintiff's personnel file.

   21.   **Covenant Not to File Claim in Court of Claims.**

   Plaintiff warrants and agrees that she will not file with the New York Court of Claims a claim against the State of New York or SUNY, or any other person or entity, and will withdraw

14

any claim pending in the New York Court of Claims, based in whole or in part upon any of the acts, transactions, occurrences or omissions asserted or which could have asserted in the Action.

### 22.  No Other Action Commenced.

Other than the Action, the Grievance, and the Notice of Intention to File a Claim, Plaintiff represents that she has not commenced, maintained, or prosecuted any action, charge, complaint, grievance, or proceeding of any kind against the State of New York or SUNY, including but not limited to any of its present and former principals, officers, directors, members, trustees, shareholders, affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally or in their official capacities, including but not limited to the Individual Defendants in their personal and official capacities, on their own behalf and/or on behalf of any other person and/or on behalf of or as a member of any alleged class of persons, that none of the foregoing is currently pending in any court or before any administrative or investigative body or agency, and acknowledge that this representation constitutes a material inducement for SUNY to enter into this Settlement Agreement.

### 23.  Waiver of Attorney's Lien.

Subject to receipt of the payment described in Paragraph 3 of this Settlement Agreement, the undersigned attorneys for Plaintiff hereby release and waive their lien for services upon the above-named Plaintiff's causes of action, claim, verdict, report, judgment, determination, or settlement in favor of said Plaintiff which they have thereon and by virtue of Section 475 of the New York Judiciary Law or otherwise.

### 24.  No Other Attorney.

The undersigned attorneys for Plaintiff further represent that there are no attorneys having a lien for services rendered to Plaintiff pursuant to the provisions of Section 475 of the New York Judiciary Law or otherwise in regard in this Action, or in any other action or proceeding alleging

15

any of the acts, transactions, occurrences or omissions asserted in this Action. The undersigned attorneys further agree to indemnify and hold harmless the State of New York and/or SUNY from any liability or claims for attorneys' fees and/or disbursements incurred by Plaintiff in connection with this Action or in connection with any other representation, negotiation, proceeding, administrative, judicial or otherwise, and any other claim or action alleging any of the acts, transactions, occurrences or omissions, asserted in the Action. Without limitation of the foregoing, Plaintiff and the undersigned attorneys for Plaintiff in this action warrant and represent that Arthur Block, Esq., an attorney engaged by Plaintiff to secure her return from medical leave to the Residence Program at SUNY Downstate Medical Center in 2015 prior to initiation of the Action, has been paid in full for all services rendered to Plaintiff and has released and waived any lien for his services upon Plaintiff's causes of action, files, claim, verdict, report, judgment, determination or settlement in favor of Plaintiff which he may have thereon, as reflected in the true copy of the letter releasing lien, dated December ___, 2016 attached as Exhibit D.

**25.    No Prevailing Party.**

Neither Plaintiff nor  shall be deemed a "prevailing party" for any purpose, including but not limited to any statutory or contractual claim based upon "prevailing party" status with respect to the Action.

**26.    Binding Effect on Successors and Assigns.**

The terms and conditions of this Settlement Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto.

**27.    Authority.**

Each signatory to this Settlement Agreement hereby represents and warrants that he, she, or it has the requisite authority to enter into this Settlement Agreement, and has not previously

16

assigned or transferred any rights or interests with respect to the matters covered by this Settlement Agreement.

**28.   Voluntary Agreement.**

Plaintiff represents that she has thoroughly discussed all aspects of this Settlement Agreement (including the General Release set forth in Paragraph 19) with her attorney, and Plaintiff represents that she has carefully read and fully understands all of the provisions of the Settlement Agreement.  Plaintiff represents that she executes and delivers the Settlement Agreement voluntarily after being fully informed of its terms, contents, and effect, and acknowledges that she understands its terms, contents, and effect.  Plaintiff acknowledges that she has been advised of her right to seek the advice of an attorney and that she is and has been represented by counsel of her own choosing before agreeing to any settlement or release, and no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party or any one acting on behalf of any party.

**29.   Negotiated Agreement.**

The parties acknowledge that each party has cooperated in the drafting and preparation of this Settlement Agreement.  The language in all parts of this Settlement Agreement shall be in all cases construed according to its fair meaning and not strictly for or against any party.

**30.   No Admission of Liability.**

It is understood and agreed that any actions taken or payments made pursuant to this Settlement Agreement are made solely to avoid the burdens and expense of protracted litigation; that this Settlement Agreement and the actions taken pursuant hereto are not to be construed as constituting any determination on the merits of any claims in this dispute or as constituting any admission of wrongdoing or liability on the part of the State of New York or SUNY, and/or any of their present and former principals, officers, directors, members, trustees, shareholders,

17

affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally and in their official capacities, including but not limited to the Individual Defendants in their individual and official capacities, and that they expressly deny any wrongdoing or liability. Nothing contained in this Settlement Agreement shall be deemed to constitute a policy or practice of the State of New York or SUNY.

**31.** **No Precedential Value.**

This Settlement Agreement shall not in any manner be construed as determinative of the issues raised in the Action, or any other proceeding, and shall have no precedential value. In addition, notwithstanding the provisions of any paragraph herein, this Settlement Agreement shall not bind or collaterally estop the State of New York or SUNY, or any of their present and former principals, officers, directors, members, trustees, shareholders, affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally and in their official capacities, including but not limited to the Individual Defendants in their personal and official capacities, in pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues raised in said actions or proceedings, or from advancing any defenses.

**32.** **Entire Agreement.**

This Settlement Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and supersedes and embodies, merges and integrates all prior and current agreements and understandings of the parties hereto, whether written or oral, with respect to the subject matter of this Settlement Agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the parties hereto or an authorized representative of the parties hereto.

18

**33.   Governing Law.**

The terms of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York, except to the extent that federal law applies to the releases and waiver of federal claims pursuant to this Settlement Agreement.

**34.   Severability.**

If any provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be invalid, void, or unenforceable in whole or in part, such decision shall not invalidate the remaining portion or affect its validity.

**35.   Headings.**

The headings contained in this Settlement Agreement are for convenience of reference only and are not a material part of this Settlement Agreement.

**36.   Submission to the Court.**

Upon its execution, this Settlement Agreement may be submitted to the Court to be "So Ordered" by any party without further notice.

**37.   Counterparts.**

This Settlement Agreement may be executed in several counterparts, each of which shall be deemed an original and which, taken together, shall constitute one and the same instrument.

19

IN WITNESS WHEREOF, the parties hereto acknowledge that they have read this Settlement Agreement and accept and agree to the provisions contained herein, and have each executed this Settlement Agreement to be effective on the day and date first above written.

_S. Kleg____ M.D._
SVETLANA KLEYMAN, M.D.

STATE OF NEW YORK, COUNTY OF NEW YORK: §§ :

On December 8 , 2016, before me personally came and appeared Svetlana Kleyman, known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and who duly acknowledged to me that she executed the same.

PARUL JHALA
Notary Public - State of New York
No. 01JH6235831
Qualified in New York
Commission Expires February 14, 2019

NOTARY PUBLIC

KAISER SAURBORN & MAIR, P.C.
Attorneys for Plaintiff
By:

Daniel J. Kaiser, Esq.
111 Broadway, Suite 1805
New York, New York 10007
(212) 338-9100

Dated:  December 1 2016

20

ERIC T. SCHNEIDERMAN
Attorney General of the
  State of New York
<u>Attorney for Defendants</u>
By:


_____          Dated: December 2 1 2016
Steven L. Banks
Assistant Attorney General
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-8621




SO ORDERED:


   s/Ann M. Donnelly
_____
HONORABLE ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
            _____, 2016




21